UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONNA M. J.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:20-CV-00556-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Donna M. J. ("Ms. J") seeks judicial review of the Social Security Commissioner's decision denying Ms. J's application for Disability Insurance Benefits ("DIB") under Title II of the Act and Supplemental Security Income ("SSI") under Title XVI. This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **REMANDS** the decision of the Commissioner of the Social Security Administration ("SSA").

### I.  OVERVIEW OF THE CASE

On September 5, 2017, Ms. J protectively filed for DIB and SSI, alleging in both applications that her disability began on June 27, 2017. The Disability Determination Bureau denied these claims on April 2, 2018, and further denied her request for

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

1

reconsideration on September 24, 2018. Following an administrative hearing on May 22, 2019, the Administrative Law Judge ("ALJ") issued a decision on June 18, 2019, which affirmed the SSA's initial denial of benefits. In the opinion, the ALJ issued several findings of fact and conclusions of law. The ALJ first found that Ms. J meets the insured status requirements of the Social Security Act through December 31, 2022. Next, the ALJ found that Ms. J has not engaged in substantial gainful activity since June 27, 2017, the alleged onset date. The ALJ determined that Ms. J had the following severe impairments: "status post aneurysm, hypertension, cervical and lumbar spine degenerative disc disease, right shoulder rotator cuff tendinitis, pelvic somatic dysfunction, right tibial neuropathy, right foot deformity, and obesity." [DE 19 at 17]. He concluded that the above-mentioned medical impairments significantly limit Ms. J's ability to perform basic work activities as required by SSR 85-28. However, the ALJ found that Ms. J's medical impairments did not meet or medically equal the severity of one of the listed impairments pursuant to 20 CFR Part 404, Subpart P, Appendix 1.

In light of these findings of fact and consideration of the record, the ALJ concluded that Ms. J has the residual functional capacity to do the following:

> [L]ift no more than twenty (20) pounds occasionally with frequent lifting or carrying objects up to ten (10) pounds; to stand and/or walk for about six (6) hours of an eight-hour workday and to sit for about six (6) hours of an eight-hour workday; she can frequently reach with both upper extremities; and she can frequently handle and finger with both hands, as well as frequently balance, stoop, kneel, and crouch. [*Id.* at 18].

Additionally, the ALJ found that Ms. J can "occasionally crawl and climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; and she can never work at

2

unprotected heights or around dangerous machinery with moving mechanical parts." [*Id.* at 18]. Thus, the ALJ found that Ms. J "has the residual functional capacity to perform light exertional work with some manipulative, postural, and environmental limitations." [*Id.* at 22]. Lastly, the ALJ determined that Ms. J can perform past relevant work as a phlebotomist and blood donor supervisor. This work, according to the ALJ, does not require the performance of work-related activities precluded by Ms. J's residual functional capacity. Based on these factual determinations, the ALJ rendered a finding that Ms. J is not disabled, as defined by the Social Security Act, from June 27, 2017, through the date of the ALJ's decision. As such, the ALJ denied Ms. J's application for DIB and SSI assistance. Ms. J now appeals the ALJ's decision to this Court.

## II. DISABILITY STANDARD

A claimant is "disabled" under the Social Security Act if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). Further, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

3

The Agency applies this statutory standard pursuant to a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The Commissioner's five-step inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her residual functional capacity ("RFC"); and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 416.920. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III.  STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g) of the Social Security Act. However, this Court's role in reviewing Social Security cases is limited. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The narrow question before this Court is not whether the claimant is in fact disabled, but rather, whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence, as interpreted by the courts, includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

4

The Seventh Circuit requires that a court "reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The ALJ, however, "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). Even if reasonable minds could differ as to the disability status of a claimant, the court "must nevertheless affirm the ALJ's decision denying her claims if the decision is adequately supported." *Elder*, 529 F.3d at 413; *see also Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (noting that the court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner.").

In addition to reviewing whether the ALJ supported his or her decision with substantial evidence, "if the Commissioner commits an error of law," a reviewing court "may reverse without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (noting that a reviewing court considers whether the ALJ's decision "is the result of an error of law.").

## IV. ANALYSIS

In the instant case, Ms. J asserts that the ALJ made two reversible errors. First, Ms. J alleges that the ALJ committed a reversible error by failing to admit and consider the treating source statement from her primary physician. Second, Ms. J states that the ALJ

failed to submit new medical evidence to medical experts for review and, instead, relied on the stale opinions by state agency physicians. For the reasons discussed below, remand is warranted.

### a. Excluding the Source Statement from Ms. J's Physician

The SSA regulations require a claimant to submit all known evidence as to whether he or she is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a)[2]. Furthermore, a claimant must "make every effort to ensure that the administrative law judge receives all of the evidence and must inform [the SSA] about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). If a claimant fails to comply with the five-day requirement, the ALJ "may decline to consider or obtain the evidence, unless [certain defined] circumstances . . . apply." *Id.* Among others, the defined exceptions include whether the claimant had a physical, mental, educational, or linguistic limitation that prevented him or her from submitting the evidence earlier. 20 C.F.R. § 404.935(b).

According to Ms. J, the ALJ committed a reversible error by failing to admit Dr. Larson's August 2018 source treating statement. [DE 23 at 12]. Specifically, Dr. Larson, Ms. J's primary care physician, opined that Ms. J could sit for one (1) hour within an eight (8) hour workday and stand/walk (combined) for less than one (1) hour within an eight (8) hour workday, which he said applied beginning in August 2017. [DE 19 at 39]. Ms. J suggests that this information shows a worsening of her condition from the time she

---

[2] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

6

began seeing Dr. Larson in February 2017. [DE 23 at 15]. The issue, however, is that Ms. J did not bring Dr. Larson's source treating statement to the attention of her counsel or the Commissioner until the day of her administrative hearing on May 22, 2019. [DE 19 at 45]. Counsel for Ms. J therefore requested to have Dr. Larson's August 2018 source treating statement admitted into the record as relevant evidence. [*Id.*] In response, the ALJ stated, "Well we certainly discussed it and you can upload it when you get back to the office," and he further added "I'm not going to hold the record open but you can upload it and I'll address it in my decision." [*Id.*]. The ALJ ultimately declined to admit the new evidence because Ms. J did not meet the requirements set forth in 20 C.F.R. § 404.935(b). [*Id.* at 14]. In particular, the ALJ found "no unusual, unexpected, or unavoidable circumstance beyond the claimant's control which prevented the document from being provided prior to five days before the hearing." [*Id.* at 14-15].

In challenging the ALJ's decision, Ms. J states that "[t]he ALJ agreed to address [Dr. Larson's] opinion in his decision once the opinion was uploaded" and therefore is bound to consider the evidence. [DE 23 at 13]. Yet, Ms. J overestimates the ALJ's statement. The ALJ clearly stated that the record would not be held open and then promised to address Dr. Larson's treating source statement in his decision. Indeed, the ALJ did exactly that; the ALJ addressed Dr. Larson's source statement in his decision. Rather than consider the substantive content of Dr. Larson's source statement, as Ms. J wants, the ALJ explained why the additional evidence could not be admitted into the record. The ALJ concluded that Ms. J failed to comply with the five-day requirement pursuant to 20 C.F.R. § 404.935(b) and did not qualify for one of the exceptions. [DE 19 at

7

14]. With nothing more, Ms. J has failed to establish that the ALJ had a legal obligation to admit Dr. Larson's opinion based on an oral promise during the administrative hearing.

However, Ms. J also challenges the ALJ's conclusion that she did not qualify for an exception under Section 404.935(b)'s five-day requirement. Ms. J argues that she qualifies for an exception because of mental limitations resulting from a stroke that led to her late submission. [DE 23 at 13]. Ms. J asserts that the ALJ did not adequately explain why she did not qualify for an exception and, instead, stated in a conclusory fashion that she did not meet an exception. [DE 27 at 3]. Moreover, Ms. J contends that her counsel did not have the opportunity to argue why she qualified for an exception based on a misunderstanding that the ALJ would admit Dr. Larson's source treating statement. [DE 23 at 13-14]. Both arguments lack merit.

To start, Ms. J points this Court to no evidence in the record suggesting that she suffers from any mental limitations and thus qualifies for an exception under § 404.935(b). Ms. J merely alleges memory and concentration problems as a result of her stroke and aneurysm without further explanation. [*See id.* at 13]. During the administrative hearing, the ALJ did inquire about the possibility of Ms. J having a mental impairment. [DE 19 at 62-63]. And at no point during the administrative hearing did the ALJ prevent counsel from explaining why Ms. J had a mental disability and therefore qualified for an exception. [*See generally id.*]. Ms. J's counsel could have but did not raise the issue when discussing Dr. Larson's source treating statement, [*see id.* at 45], and, as such, the ALJ reasonably concluded that Ms. J did not suffer from a mental impairment based on the evidence in the record and testimony from the administrative hearing.

In sum, the ALJ's decision to exclude Ms. J's late submission of Dr. Larson's opinion from the record is supported by substantial evidence and does not amount to a legal error.

### b. Failing to Submit New Medical Evidence for Expert Review

Ms. J next alleges that "[t]he ALJ relied on stale medical opinions and did not submit complex new objective medical evidence . . . to a medical expert for further review." [DE 23 at 16]. The opinions at issue were reached by the state agency medical consultants in September 2018, [DE 19 at 86-96, 97-107], before Ms. J had an x-ray in March 2019 and MRI in April 2019. [*Id.* at 892-893, 920-921]. Instead, Ms. J contends that the ALJ wrongly concluded that the new x-ray and MRI "would not substantively alter the light residual functional capacity without mental limitation assessed by the reviewing consultants." [DE 23 at 19]. Accordingly, Ms. J claims that the ALJ committed a reversible legal error. [*Id.* at 16, 19].

The Seventh Circuit has often reiterated that it is impermissible for an ALJ to succumb to the temptation to "play doctor" and rely on his or her "own assessment of the medical evidence to reach conclusions unsupported by the record." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). For example, in *Goins v. Colvin*, the court found that the claimant's MRI required expert medical review. 764 F.3d 677, 680 (7th Cir. 2014). The court explained that the MRI required professional medical evaluation, which amounted to "new and potentially decisive medical evidence." *Id.* According to the court, the ALJ summarized the results of an MRI "in barely intelligible medical mumbo jumbo." *Id.* Furthermore, the ALJ's summary stood by itself—unrelated to the rest of the

9

opinion—and the ALJ did not address the fact that the new MRI showed significant differences from an earlier evaluation. *Id.*; *see also Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (noting that "without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment."); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments.").

Recently, however, in *Kemplen v. Saul*, the Seventh Circuit clarified that not all new medical evidence requires professional scrutiny beyond the assessment of an ALJ. 844 F. App'x 883, 887 (7th Cir. 2021), as amended on reh'g in part (June 21, 2021). There, the Seventh Circuit noted that it previously "upheld the denial of benefits when MRI evidence post-dating the state agency consultant's report showed only mild changes in the claimants' respective conditions." *Id.* Thus, the question is whether the new information drastically changed the circumstances "so that the ALJ erred by continuing to rely on an outdated assessment . . . and by evaluating himself the significance of [the subsequent] report, or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Id.* (internal citations omitted). There, the court ultimately remanded because the new x-rays were inconsistent with the ALJ's opinion.

The narrow question for this Court is whether the ALJ supported his opinion with substantial evidence. While the Seventh Circuit has opined that, as a matter of law, MRIs or x-rays do not require additional medical scrutiny, potentially new and decisive evidence requires expert evaluation beyond that of the ALJ. Nevertheless, the ALJ's

opinion must demonstrate to a reviewing court that the new evidence is insubstantial when weighed against the evidentiary record. Ms. J argues that the ALJ inappropriately evaluated a March 2019 x-ray and an April 2019 MRI similar to the error in *Goins v. Colvin*. [DE 23 at 18]. Here, the Court does not decide whether Ms. J's new medical evidence is decisive. Instead, the Court finds that the ALJ did not sufficiently explain why the new information did not substantially change Ms. J's RFC.

According to the ALJ, "[w]hile the statements about the intensity, persistence, and limiting effects of the claimant's symptoms have been considered carefully; the record in its entirety, including the objective evidence, is inconsistent with a finding of disability." [DE 19 at 19]. Thereafter, the ALJ presented medical evidence and testimony to support his conclusion regarding Ms. J's disabled status. [*See generally id.* at 18-23]. The ALJ wrote that Ms. J's March 2019 x-ray "found degenerative disc disease in the mid-to-lower cervical spine, most severe at C5-C6; flattening of the cervical lordosis; but no instability demonstrated with flexion and extension views." [*Id.* at 21]. Next, the ALJ recounted an April 2019 evaluation by Ms. J's physiatrist, which does not directly assess the significance of the March 2019 x-ray but does state that "[a] lumbar MRI was ordered for [Ms. J's] continued complaints of lumbar spondylosis foraminal stenosis." [*Id.*]. The ALJ next summarized Ms. J's April 2019 MRI as "show[ing] mild lumbar spondylosis with mild central canal stenosis at L5-S1 to moderate disc protrusion, mild bilateral L5-S1 greater than L4-L5 neural foraminal narrowing, and an incompletely imaged, presumed uterine fibroid." [*Id.* at 22]. The ALJ offered no additional commentary beyond the MRI summary.

11

After summarizing Ms. J's medical history, the ALJ concluded "that the claimant has the residual functional capacity to perform light exertional work with some manipulative, postural, and environmental limitations." [*Id.*] Further, the ALJ suggested that he "was somewhat persuaded by the opinions of the State Agency medical consultants at the reconsideration level," [*Id.* at 23], which occurred in September 2018 before the above-mentioned x-ray and MRI. But the ALJ found that subsequent evidence entered into the record after the evaluation by the government's experts "shows that the claimant's limitations differed from those they found." [*Id.*] The ALJ did not elaborate any further as to what evidence differed from the government's medical experts.

The fundamental issue is that the ALJ summarized the March 2019 x-ray and April 2019 MRI without further explanation. At no point in the opinion does the ALJ explain how the evidence is or is not inconsequential to his final determination. Accordingly, the ALJ did not create a "logical bridge" between the evidence and conclusion as required by the standard of review. *See Beardsley,* 758 F.3d at 837. In fact, the situation is akin to *Goins v. Colvin* where the ALJ summarized "barely intelligible medical mumbo jumbo" which stood by itself, unrelated to the rest of the opinion. 764 F.3d at 680. Likewise, in the instant case, the ALJ summarized medical reports without further connecting them to his overall opinion and final determination.

The Commissioner, however, suggests that *Goins v. Colvin* does not apply because the new evidence here "is relatively straightforward, and the ALJ's discussion relies on observations from physicians who provided the reports as well as the observations of treating sources." [DE 24 at 12]. Even if, as the Commissioner argues, the evidence is

12

relatively straightforward, the Court cannot substitute the ALJ's judgment and reweigh evidence in the record. *See Estok*, 152 F.3d at 638 (noting that a court cannot "substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility."). The purview of the Court's review is narrowly based on whether the ALJ demonstrated a logical bridge from the evidence in the record to a reasonable conclusion.

But here, the ALJ did not explain why the x-ray and MRI are consistent with the evidentiary record. For example, the ALJ did not compare or contrast the x-ray and MRI to prior medical findings. Nor did the ALJ accompany the x-ray and MRI summaries with commentary or context from medical professionals. For instance, the April 2019 evaluation by Ms. J's physiatrist offers no opinion as to the significance of the March 2019 x-ray. [*See* DE 19 at 21]. Likewise, the April 2019 MRI contains a summary of complex medical findings without context as to what those findings mean. [*See id.* at 22]. As written by the ALJ, the x-ray and MRI amount to nothing more than medical gibberish, and therefore, the Court cannot decipher whether the evidence is so inconsequential that further expert evaluation would be rendered superfluous, or not.

In conclusion, the ALJ did not support his opinion with substantial evidence because the March 2019 x-ray and April 2019 MRI stand unconnected to the rest of the opinion. As such, the Court cannot evaluate whether the ALJ committed a legal error in declining to submit this new evidence for expert review. Without further explanation, the Court is unable to decipher whether the x-ray and MRI are insubstantial or consequential enough to change the reliability of the government's consultants.

### V. CONCLUSION

For the reasons discussed above, the Commissioner's decision is **REMANDED** for further consideration consistent with this opinion.

**SO ORDERED** this 28th day of February 2022.

                                              s/Michael G. Gotsch, Sr.
                                              Michael G. Gotsch, Sr.
                                              United States Magistrate Judge